**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jimmy Dean WEBB, Defendant–**
**Appellant.**

No. 90–3493.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1991.

Decided Oct. 4, 1991.

Richard H. Lloyd, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Crim. Div., East St. Louis, Ill., for plaintiff-appellee.

Michael Dwyer (argued), Office of the Federal Public Defender, St. Louis, Mo., for defendant-appellant.

Before BAUER, Chief Judge, and CUMMINGS and POSNER, Circuit Judges.

BAUER, Chief Judge.

On May 17, 1990, agents of the Illinois State Police, Division of Criminal Investigation, executed a search warrant on rural property belonging to defendant-appellant Jimmy Dean Webb and located in Effingham County, Illinois. The agents seized 4,428 marihuana seedlings which were growing in starter plant containers known as "hot boxes." None of the plants seized were full grown. The seedlings were approximately two inches high.

Webb pleaded guilty to manufacturing marihuana in violation of Title 21, United States Code, Section 841. Webb entered his plea in return for the government's promise that it would recommend that the court impose a 144–month sentence. Nevertheless, before sentencing, Webb challenged the constitutionality of the statutes that determined the length of his sentence. Specifically, Webb claimed that application of Section 2D1.1 of the United States Sentencing Commission Guidelines Manual (the "Guidelines") and the accompanying Drug Quantity Table (the "Table") results in sentences that are arbitrary and capricious because the weight assigned each marihuana plant in the Table (and, thus, the offense level determining Webb's sentence range) differs significantly from the expected yield of Webb's crop.

Webb's objections were overruled at the November 5, 1990, sentencing hearing. Applying the challenged Guidelines, the district court determined the appropriate Offense Level to be 32 and the appropriate Criminal History Category to be III. These indicia placed Webb in the range of 151 to 188 months imprisonment. The district court sentenced Webb to 151 months. Webb appealed.

On appeal, Webb renews his argument that the Guidelines under which he was sentenced are arbitrary and irrational, and thereby deny him due process and the equal protection of the laws in violation of the fifth amendment. Webb bases his argument on the premise that the Guidelines's rule for translating the number of marihuana plants into a specific weight on the Table should be based on the actual yield of each plant. Because the weights assigned in the Table do not accurately capture the true yield of a given plant, Webb argues, Section 2D1.1 of the Guidelines is unconstitutionally capricious.

The explanatory footnote to Section 2D1.1 of the Guidelines states:

In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

Guidelines § 2D1.1 at 2.47 (emphasis in original). Because Webb's crop involved well over fifty plants, each plant was treated as 1 KG of marihuana. Thus, the 4,428 seedlings seized translated into 4,428 KG of marihuana for sentencing purposes.

Webb perceives two glaring errors in the Guidelines' formula. First, Webb contends that Congress' decision to set fifty marihuana plants as the cut-off mark for an exponentially higher sentence is unconstitutionally arbitrary. Webb points out that "one does not need training as a botanist to know that there is nothing about a fifty-first marihuana plant that increases the yield or weight of all plants by a factor of ten; that is, from 100 grams per plant to 1,000 grams per plant." Appellant's Brief at 3.

Second, Webb describes as nonsensical Congress' decision to treat each plant (presuming the defendant is caught with more than fifty plants) equivalent to 1 KG of marihuana. At his sentencing hearing,

Webb introduced the results of several academic studies that attempted to determine scientifically the average yields of marihuana plants. With this botanical evidence, Webb sought to demonstrate that a marihuana plant would produce far less than 100 grams of "smokable product." For instance, Webb describes how a planter must first remove the male plants from the crop (apparently only female plants produce marihuana that is marketed commercially [1]), and then process the remaining plants by removing the stems and drying the leaves. *See generally* Frank & Rosenthal, *Marijuana Grower's Handbook* 288–89 (1990). Webb concludes that the sentencing guidelines violate the constitution because the actual yield of each plant is far less than the weight assigned to each plant by the Table.

Though Webb's arguments offer interesting agricultural reading (and demonstrate the appellant's fertile mind), he has failed to sow the seeds of doubt in this court. Webb's argument is rooted in an erroneous premise: that the weights assigned to each plant for sentencing purposes must represent scientifically correct yields. Essentially Webb challenges Congress' decision that the number of plants, not their weight or their actual yields, determines one's sentence. Webb correctly argues that there is no correlation between a fiftieth plant and a ten-fold increase in weight or yield. There is no correlation to weight or yield because that was not the basis of Congress' sentencing scheme. The legislative history of 21 U.S.C. § 841 reveals Congress' intent:

Believing "that the federal government's most intense focus ought to be on major traffickers" in illegal drugs, Congress, "after consulting with a number of DEA agents and prosecutors about the distribution patterns for these various drugs ... selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level." H.R.Rep. No. 845, 99th Cong. 2d Sess. 11–12 (1986).

1. Sex pops up in the most unexpected places.

*United States v. Rose,* 881 F.2d 386, 389 (7th Cir.1989). Understanding Congress' desire to punish whom it considered "major drug traffickers," we have declared previously that "judgments concerning what conduct should be made criminal and how heavily it should be punished are for Congress rather than courts to make." *Id.*

Thus, the right of the Sentencing Commission to formulate a comprehensive set of guidelines has withstood constitutional challenge. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). In the instant case, the Guidelines merely reflect Congress' decision to use the fiftieth plant as an indicator of culpability and participation in the drug marketplace. The Guidelines note that "[t]he Commission has used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences.... Because of the statutory equivalences, the ratios in the Drug Equivalency Table do not necessarily reflect dosages based on pharmacological equivalents." Guidelines § 2D1.1 comment n. 10. Guideline 2D1.1 is a mirror image of the penalties under 21 U.S.C. § 841 for convictions involving fifty or more plants, and consequently must withstand attack, absent a finding that the statute itself is unconstitutional. *See Mistretta,* 488 U.S. at 391, 109 S.Ct. at 664. Webb does not even attempt to challenge § 841, apparently knowing full well that this court has consistently found that sentences imposed pursuant to that statute are indeed constitutional. *See United States v. McNeese,* 901 F.2d 585, 606 (7th Cir.1990) (listing cases).

Finally, Webb raises a veritable garden of additional suppositions that he contends should reduce his sentence. Webb asks, what if he had not been caught until he had weeded out the male plants?; what if he had not been caught until the plants were harvested?; what if he had not been caught until the leaves were dried and the stems removed? Webb could continue this line of reasoning forever—such "what iffing" simply is not relevant to the sentence at hand.

For the foregoing reasons, we hold that Webb's claims are without merit and, therefore, his sentence is

AFFIRMED.